STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 319-8500
Fax: (212) 319-8505
Leonard P. Goldberger (*pro hac vice*)
Alec P. Ostrow (AO-3104)
Jocelyn Keynes (JK-7728)
Email: lpg@stevenslee.com
 apo@stevenslee.com
 jk@stevenslee.com

*Counsel for George M. Kelakos, as Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------
|  | : |  |
| :--- | :--- | :--- |
| In re | : | Chapter 11 |
|  | : |  |
| TERRA NOSTRA RESOURCES CORP., | : | Case No. 08-14708 (JMP) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |
--------------------------------------------------------

<u>**TRUSTEE'S AMENDED PLAN OF REORGANIZATION**</u>

George M. Kelakos, as Chapter 11 trustee (the "<u>Trustee</u>") of Terra Nostra

Resources Corp. (the "<u>Debtor</u>" or "<u>Terra Nostra</u>"), the debtor in the above-captioned chapter 11

case, hereby proposes the following Amended Chapter 11 Plan, pursuant to Section 1121 of the

Bankruptcy Code. Certain capitalized terms that are used in this Plan shall have the meanings set

forth in Article I below. Reference is made to the Disclosure Statement for a discussion of the

Debtor's histories, businesses and assets, the Cases, risk factors, a summary and analysis of the

Plan, and other related matters. All parties entitled to vote on the Plan should review the

Disclosure Statement and the terms of the Plan before voting to accept or reject the Plan. No

solicitation materials, other than the Disclosure Statement and related materials transmitted

therewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

# ARTICLE I
## Definitions and Rules of Interpretation

A. Definitions

For purposes of the Plan, and in addition to those terms defined in the text of the Plan, the following terms shall have the respective meanings hereinafter set forth (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires).

1.1. "Administrative Bar Date" means the first business day which is the thirtieth day after the Confirmation Date or such other date established by order of the Bankruptcy Court as the last date to file requests for payment of Administrative Claims not required to be filed prior to the Bar Date, including Claims for Professional Fee Claims.

1.2. "Administrative Claim" means a Claim incurred during the Administrative Period, an application for the payment of which is duly filed in accordance with Section 503(a) of the Bankruptcy Code on or before the Administrative Bar Date, purporting to meet one of the classification requirements of any subsection of Section 503(b) of the Bankruptcy Code, and which is entitled to treatment under Section 507(a) and/or Section 1129(a)(9)(A) of the Bankruptcy Code, and includes fees required to be paid pursuant to Section 1930 of Title 28 of the United States Code.

1.3. "Administrative Period" means the period beginning on the Relief Date and ending on the Confirmation Date.

SL1 923094v1/104237.00009

1.4. "Allowed Administrative Claim" means (a) each Administrative Claim, including Claims for Professional Fee Claims, pursuant to Section 503(a) of the Bankruptcy Code, allowed by Final Order of the Bankruptcy Court after timely application for payment of such Claim filed on or before the Administrative Bar Date; and (b) each Administrative Claim arising from and computed in accordance with any of the Post-Petition Financing Agreements

1.5. "Allowed Claim" means any claim, proof of which was timely filed or deemed filed with the Bankruptcy Court or that was been listed on the Schedules as not disputed, contingent or unliquidated as to which, and to the extent to which, (a) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; or (b) any objection has been denied by a Final Order of the Bankruptcy Court.

1.6. "Ballot" means the form distributed to each holder of an Impaired Claim against the Debtor that is entitled to vote to accept or reject the Plan on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7. "Bankruptcy Code" means Title 11 of the United States Code, as amended, in effect and applicable to the Reorganization Case concerning the Debtor.

1.8. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004, having jurisdiction over the Reorganization Case, or such other court as may hereafter exercise original subject matter jurisdiction over the Reorganization Case.

SL1 923094v1/104237.00009

1.9.  "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, in effect and applicable to the chapter 11 case concerning the Debtor.

1.10.  "Bar Date" means May 8, 2009, the date fixed by the Bankruptcy Court, pursuant to Rule 3003(c)(3) of the Bankruptcy Rules, as the last date for filing of proofs of Claim against the Debtor which arose prior to the Filing Date or which are Gap Period Claims, or which are certain Administrative Claims that are required by the Bar Date Order to be filed by such date.

1.11.  "Bar Date Order" means the order of the Bankruptcy Court, dated March 31, 2009, that set the Bar Date.

1.12.  "Business Day" means any day of the week which does not fall on a Saturday, Sunday or "legal holiday" as defined at Bankruptcy Rule 9006(a).

1.13.  "Cash" means cash or cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.14.  "Causes of Action" means any and all Claims, rights, defenses, offsets, recoupments, actions in law or equity or otherwise, choses in action, suits, damages, rights to legal or equitable remedies, judgments, third-party Claims, counterclaims and cross-claims against any Person, whether arising under the Code or federal, state, common, or other law of the United States or any other government, regardless of whether such Cause of Action is the subject of pending litigation or proceedings on the Confirmation Date, the Effective Date, or thereafter, including, without limitation, as to Causes of Action of the Debtor:  (a) all Claims arising under Sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code; (b) all other Claims in avoidance, recovery, and/or subordination; (c) Claims of a category or nature

described in the Disclosure Statement; and (d) all other actions each of which will be identified in a Plan Supplement.

1.15. "Chinese JVs" means SOSS and STJMC.

1.16. "Claim" means any (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.17. "Claimant" means the holder of a Claim against the Debtor.

1.18. "Class" means a category of holders of Claims or Interests which are substantially similar to other Claims or Interests in such Class.

1.19. "Committee" means the ad hoc committee of noteholders of the Debtor that formed in September 2008 to negotiate with the Debtor a restructuring of the Debtor's repayment of the Notes.

1.20. "Confirmation Date" means the date that the order of the Bankruptcy Court confirming this Plan is entered by the clerk of the Bankruptcy Court.

1.21. "Confirmation Hearing" means the hearing held by the Court to consider the Confirmation of the Plan pursuant to Section 1129 of the Code, as such hearing may be adjourned or continued from time to time.

1.22. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 129 of the Bankruptcy Code.

SL1 923094v1/104237.00009

1.23. "Creditor" means any person that holds a Claim which arose prior to the Filing Date; or any person who holds a Claim which arose after the Filing Date, other than an Administrative Expense Claim of the type specified in Bankruptcy Code Section 503(b); or any person that holds a Claim of the kind specified in Bankruptcy Code Section 502(g), 502(h) or 502(i).

1.24. "Debt" means liability on a Claim.

1.25. "Debtor" means Terra Nostra Resources Corp., a Nevada corporation.

1.26. "Disallowed" means a Claim against the Debtor or any portion thereof that: (i) has been disallowed or expunged by a Final Order; (ii) has been withdrawn, in whole or in part, by the holder thereof or by agreement with the Trustee; (iii) is Scheduled at zero or as contingent, disputed or unliquidated and as to which no proof of Claim has been filed by the Bar Date or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order; or (iv) is not listed in the Schedules and as to which no proof of Claim has been timely filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order.

1.27. "Disclosure Statement" means the document, and all exhibits, annexed thereto, filed in connection with Debtor's Reorganization Case pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court as containing "adequate information" as that term is defined in Section 1125(a)(1) of the Bankruptcy Code, as the same may be amended or modified from time to time by any duly authorized amendment or modification.

1.28. "Disputed Claim" means a Claim with respect to which an objection has been duly filed and not subsequently withdrawn by the Debtor and which has not been finally determined by an order of the Bankruptcy Court.

6

1.29. "Effective Date" means the first business day of the first month following the date on which the Confirmation Order becomes a Final Order.

1.30. "Estate" means the bankruptcy estate of the Debtor as created and defined in Section 541 of the Bankruptcy Code.

1.31. "Executory Contract" means any executory contract or unexpired lease subject to Section 365 of the Bankruptcy Code, between the Debtor and any other Person.

1.32. "Filing Date" means November 25, 2008, the date an involuntary case under chapter 11 of the Bankruptcy Code was commenced in the Bankruptcy Court against the Debtor.

1.33. "Final Order" means an order or judgment of the Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal or seek review, rehearing, reargument, or certiorari has expired and as to which no appeal or petition for review, rehearing, reargument, stay or certiorari is pending, or as to which any right to appeal or to seek certiorari, review, or rehearing has been waived, or if an appeal, reargument, petition for review, certiorari, or rehearing has been sought, the order or judgment of the Court has been affirmed by the highest court to which the order was appealed or from which the reargument, review, or rehearing was sought, or certiorari has been denied, and as to which the time to take any further appeal, or seek further reargument, review, certiorari, or rehearing has expired.

1.34. "Funding Noteholders" means the group of Creditors led by several of the existing holders of Notes who will participate in a Reorganization Transaction described as Option C in Section 6.2 of the Plan.

1.35. "Gap Period Claim" means a Claim against the Debtor for payment of a Claim of the kind specified in Section 502(f) of the Bankruptcy Code and referred to in Section 507(a)(3) of the Bankruptcy Code.

1.36. "General Unsecured Claim" means any Claim that is unsecured and that is not entitled to priority pursuant to the Bankruptcy Code.

1.37. "Impaired" means "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

1.38. "Interests" means all equity interests in the Debtor, including, without limitation, Old Common Stock, and any other common and preferred stock, options or warrants to purchase or acquire such stock, or any unpaid dividends or distributions thereon or any agreements or contracts to purchase or acquire the same or any Claims subordinated to Unsecured Claims whether pursuant to Section 510(b) of the Code or otherwise.

1.39. "New Common Stock" means the class or series of common stock to be issued by the Reorganized Debtor pursuant to this Plan.

1.40. "Notes" means those 10% Senior Secured Promissory Notes issued by the Debtor in the aggregate principal amount of $24,925,000.

1.41. "Old Common Stock" means the class or series of common stock issued by the Debtor prior to the Filing Date.

1.42. "Person" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

1.43. "Petitioning Creditors" means Sofaer Capital Inc., c/o Sofaer Administration Ltd.; Sofaer Capital Natural Resources Hedge Fund, c/o Sofaer Global Research (UK) Limited; Sofaer Capital Asian Hedge Fund, c/o Sofaer Global Research (UK) Limited; Sofaer Capital Emerging Markets Hedge Fund, c/o Sofaer Global Research (UK) Limited; Photon Global, Ltd.; Cheyne Capital Management (UK) LLP; Anthony Giammalva, c/o Sound Energy Partners, Inc.;

SL1 923094v1/104237.00009

Kristoffer Andenaes; Holland Park Emerging Markets Fund - In Voluntary Liquidation, c/o Kroll (Cayman) Limited; Alpha Capital Anstalt; and Chestnut Ridge Partners LP; DD Growth Premium Master Fund; and Paragon Capital LP.

1.44. "Plan" means this Amended Plan of Reorganization, and any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized amendment or modification.

1.45. "Plan Administrator" means George M. Kelakos, who will serve in such capacity as of the Effective Date to make distributions on Allowed Claims and to commence, continue or resolve Claims and Causes of Action that are not the subject of releases granted during the Reorganization Case or pursuant to the Plan.

1.46. "Plan Documents" means all documents that aid in effectuating this Plan and the Reorganization Transaction contemplated by this Plan.

1.47. "Plan Supplement" means a supplement to this Plan containing certain Plan Documents relevant to the implementation of this Plan.

1.48. "Post-Petition Financing Agreements" mean all agreements with the Trustee and approved by the Bankruptcy Court to lend money to the Debtor after the Relief Date, and any and all related amendments thereto.

1.49. "PRC" means the People's Republic of China, including any political or governmental subdivision thereof.

1.50. "Priority Claim" means a Claim which qualifies for priority treatment under Section 507(a) of the Bankruptcy Code, excluding Claims entitled to priority under subsections 507(a)(2), 507(a)(3) and 507(a)(8).

SL1 923094v1/104237.00009

1.51.  "Priority Tax Claim" means an Unsecured Claim against the Debtor of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.  Priority Tax Claims shall include only such Claims for penalties that are related to a Claim specified in Section 507(a)(8) of the Code and that seek compensation for actual pecuniary loss.

1.52.  "Professional Fee Claims" means Claims against the Debtor of Professional Persons or any other Person for compensation and/or reimbursement of expenses pursuant to Sections 328, 330, 331, 503(b)(3) or 503(b)(4) of the Code.

1.53.  "Professional Persons" means all attorneys, accountants, financial advisors, investment bankers, appraisers, consultants, and other professionals retained or to be compensated by this Estate pursuant to an order of the Bankruptcy Court entered under Sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code.

1.54.  "Pro Rata" means proportionally, so that the ratio of the amount of consideration distributed on account of a Claim to the amount of the Claim is the same as the ratio of the amount of consideration distributed on account of all Claims of the Class in which the particular Claim is included to the amount of all Claims of that class.

1.55.  "Relief Date" means December 17, 2008, the date the Bankruptcy Court ordered relief under the Bankruptcy Code against the Debtor, pursuant to Section 303(h) of the Bankruptcy Code.

1.56.  "Reorganization Case" means the bankruptcy case of the Debtor, designated as Bankr. No. 08-14708 (JMP), commenced on the Filing Date by the filing of a involuntary petition for relief under chapter 11 of the Bankruptcy Code and ending upon the entry of a final decree.

SL1 923094v1/104237.00009

1.57. "Reorganization Transaction" means the transaction or set of transactions to be implemented under the Plan, as selected in Section 6.3 of the Plan from the options set forth in Section 6.2 of the Plan.

1.58. "Reorganized Debtor" means Terra Nostra Resources Corp. as of and after the Effective Date.

1.59. "Schedule of Assumed Contracts" means the schedule of Executory Contracts to be assumed under the Plan, and to be filed with the Bankruptcy Court not later than ten (10) days prior to the date of the Confirmation Hearing.

1.60. "Scheduled" means, with respect to any Claim, that such Claim is listed on the Schedules.

1.61. "Schedules" means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statements of financial affairs and other schedules and statements filed by the Trustee pursuant to Bankruptcy Rule 1007, and any amendments thereto.

1.62. "Secured Claim" means a Claim secured by a "lien," as that term is defined at Section 101(37) of the Bankruptcy Code, including, but not limited to, a "judicial lien" as that term is defined at Section 101(36) of the Bankruptcy Code, against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Claimant's interest in the Debtor's interest in such property.

1.63. "Secured Creditor" means the holder of a Secured Claim.

1.64. "Shareholder Investor Group" means the group of investors led by several of the existing shareholders of the Debtor who will participate in a Reorganization Transaction described as Option B in Section 6.2 of the Plan.

1.65. "SQSS" means Shandong Quanxin Stainless Steel Co., Ltd.

1.66. "STJMC" means Shandong Jinpeng Copper Co. Ltd.

1.67. "Trustee" means George M. Kelakos, the Chapter 11 trustee of the Debtor.

1.68. "Unimpaired" means, with respect to a Class of Claims, that such Class is not Impaired.

1.69. "United States Trustee" means any and all representatives and employees of the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, the governmental entity empowered to oversee the administration of the Reorganization Case.

1.70. "U.S. Trustee Fees" means all fees and charges assessed against the Estates under Section 1930 of Title 28 of the United States Code, and interest, if any, for delinquent quarterly fees pursuant to Section 3717 of Title 31 of the United States Code.

B.  Rules of Interpretation

1.71. <u>General Rules</u>.  For purposes of this Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any references in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in the Plan, any reference in the Plan to an existing document or appendix filed or to be filed means such document or appendix, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) unless otherwise specified herein, any reference to an entity as a holder of a Claim or Interest includes that entity's successors, assigns and affiliates; (e) unless otherwise

specified, all references in the Plan to sections, articles and schedules are references to sections, articles and schedules of or to the Plan; (f) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (g) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply.

1.72.  <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II**

**<u>Payment of Claims Not Required To Be Classified</u>**

2.1.  <u>Administrative Claims, Gap Period Claims and Priority Tax Claims Not Classified</u>.  Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified by the Plan.

2.2.  <u>Payment of Allowed Administrative Claims and Gap Period Claims</u>.  Persons holding Administrative Claims and Gap Period Claims that are allowed as of the Confirmation Date, shall be paid in full in Cash on the Effective Date or pursuant to the ordinary terms of payment applicable to such Claim.

2.3.  <u>Payment of Professional Fees</u>.  Compensation and reimbursement of expenses awarded to Professional Persons pursuant to Sections 330 and 503(b)(4) of the Bankruptcy Code shall be paid after entry of a Final Order by the Bankruptcy Court awarding such compensation and reimbursement of expenses.

2.4.  <u>Payment of Allowed Priority Tax Claims</u>.  Priority Tax Claims that are allowed as of the Confirmation Date shall be paid at the Reorganized Debtor's election either in full in Cash on the Effective Date or in regular installments payments in cash commencing on the Effective Date and concluding not later than the fifth anniversary of the Relief Date, with accrued

13

interest at the statutory interest rate applicable to such taxing authority or, if no such rate exists, at 6%.

2.5. <u>Procedures for Administrative Claims, Gap Period Claims and Priority Tax Claims Not Allowed as of the Effective Date</u>. The Confirmation Order shall specifically provide that each Administrative Claimant, including Claimants seeking allowance of Professional Fees, that fails to timely and duly file a request for payment of its Administrative Claim by the Administrative Bar Date shall be forever barred from asserting any such Administrative Claim. Notwithstanding any other provisions of the Plan, no payments or distributions will be made on account of Administrative Claims, Gap Period Claims and Priority Tax Claims that are not Allowed Claims as of the Effective Date or, if less than the entire Claim is a Disputed Claim, the portion of the Claim that is a Disputed Claim, until such Claim or portion thereof becomes an Allowed Claim pursuant to a Final Order, or unless an order of the Bankruptcy Court provides otherwise. As Administrative Claims, Gap Period Claims and Priority Tax Claims become allowed pursuant to a Final Order, the Debtor shall satisfy such Allowed Claims.

2.6. <u>United States Trustee Fees.</u> All fees payable, pursuant to 28 U.S.C. § 1930(a) shall be paid. Such fees that are due on or prior to the Effective Date shall be paid not later than the Effective Date. Such fees that are due after the Effective Date shall be paid when due. The Reorganized Debtor shall file periodic post-confirmation status reports, pursuant to Local Bankruptcy Rule 3021-1.

2.7. <u>Recognition of Certain Administrative Expense Claims</u>. The services of the Committee in obtaining the appointment of the Trustee, including all related preparation and litigation, and the services of the lenders in connection with the Post-Petition Financing Agreements shall be deemed to have made a substantial contribution in the Reorganization Case,

14

pursuant to Section 503(b)(3)(D) of the Bankruptcy Code. Pursuant to Section 503(b)(4), counsel for the Committee and the lenders in connection with the Post-Petition Financing Agreements shall be entitled to reasonable compensation for such services, and counsel for the Petitioning Creditors shall be entitled to reasonable compensation for services related to the filing of the involuntary petition and the prosecution of the Reorganization Case. The amount of such reasonable compensation shall be determined by the Bankruptcy Court in accordance with the procedures in this Reorganization Case governing payment of Professional Fees.

**ARTICLE III**

**<u>Designation of Classes of Claims and Interests</u>**

3.1. <u>Class 1: Post-Petition Secured Claims</u>. Class 1 shall consist of the post-petition Secured Claims incurred in connection with the Post-Petition Financing Agreements and related amendments. Class 1 is Unimpaired by the Plan and, therefore, each holder of an Allowed Class 1 Claim is deemed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

3.2. <u>Class 2: Other Secured Claims</u>. Class 2 shall consist of all Secured Claims against the Debtor not included in Class 1. In accordance with Section 1129(a)(9)(D) of the Bankruptcy Code, a Secured Claim which would otherwise be considered a Priority Tax Claim, except for its status as a Secured Claim, shall be excluded from Class 2, and shall be treated as a Priority Tax Claim. Each holder of a Claim in Class 2 shall be considered as though it were placed in a separate class for purposes of voting and distribution under the Plan. Class 2 is Impaired by the Plan and, therefore, each holder of an Allowed Class 2 Claim is and is entitled to vote to accept or reject the Plan.

SL1 923094v1/104237.00009

3.3.  Class 3:  Priority Claims.  Class 3 shall consist of all Priority Claims against the Debtor.  Class 3 is Unimpaired by the Plan and, therefore, each holder of an Allowed Class 3 Claim is deemed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

3.4.  Class 4:  General Unsecured Claims.  Class 4 shall consist of all General Unsecured Claims against the Debtor, but excluding those Claims classified in Class 5.  Class 4 is Impaired by the Plan and, therefore, each holder of an Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

3.5  Class 5:  Interests.  Class 5 shall consist of all Interests of the Debtor.  Each holder of an Interest in Class 5 shall not receive or retain any property under the Plan and, therefore, is deemed to have rejected the Plan and, therefore, each holder of an Interest in Class 5 is not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## Treatment of Unimpaired Classes

4.1.  Unimpaired Classes.  Class 1 and Class 3 are not impaired under the Plan.

4.2.  Treatment of Class 1.  The Plan leaves unaltered the legal, equitable, and contractual rights to which the holders of Claims in Class 1 are entitled.  On the Effective Date, each holder of an Allowed Claim in Class 1 shall receive Cash equal to 100% of the allowed amount of such Class 1 Claim, together with interest, at the rate set forth in the Post-Petition Financing Agreements.

4.3.  Treatment of Class 3.  The Plan leaves unaltered the legal, equitable, and contractual rights to which the holders of Claims in Class 3 are entitled.  On the Effective Date, each holder of an Allowed Claim in Class 3 shall receive Cash equal to 100% of the allowed

16

amount of such Class 3 Claims, together with interest, if any, to which each holder may be entitled under applicable law on such Class 3 Claims.

**ARTICLE V**
**<u>Treatment of Impaired Classes</u>**

5.1.  <u>Impaired Classes</u>.  Class 2, Class 4 and Class 5 are impaired under the Plan.

5.2.  <u>Treatment of Class 2</u>.   A holder of an Allowed Claim in Class 2 shall receive the following treatment:  Each holder of an Allowed Claim in Class 2 shall receive on the Effective Date, at the election of the Reorganized Debtor, one of the following alternatives: (a) cash equal of the Allowed Amount of its Claim; (b) a surrender of the collateral securing the Allowed Claim; or (c) the holder's legal, equitable and contractual rights unaltered by the Plan.

5.3.  <u>Treatment of Class 4</u>.   A holder of an Allowed Claim in Class 4 shall receive the following treatment:  A pro rata distribution of the Class 4 proceeds set forth in Section 6.3(f).

5.4.  <u>Treatment of Class 5</u>.  On the Effective Date, the holders of Interests in the Debtor will neither receive nor retain any property of the Debtor on account of their Interests.  In particular, there will be no distribution to holders of Interests on account of such Interests and all Old Common Stock of the Debtor will be canceled.

**ARTICLE VI**
**<u>Voting Options and Means of Implementing the Plan</u>**

6.1.  <u>Choice of Reorganization Transaction</u>.  The Ballot for holders of Allowed Claims in Class 4 shall contain provisions for the holders to select their preferences for a Reorganization Transaction among the three options set forth in Section 6.2.

17

6.2.  Options for the Reorganization Transaction.  The reorganization transaction will be selected from the following three options:

(a)  Option A – Sale of Chinese JVs:  On the Effective Date, the Reorganized Debtor's interests in the Chinese JVs will be sold to Zhang Ke, a natural citizen of the PRC, or his designees for $27,000,000, payable as follows:  Within ten (10) business days of the date when the Confirmation Order becomes a Final Order, a first installment payment to the Plan Administrator shall be made of not less than the amount necessary to satisfy all Administrative Expense Claims, Gap Period Claims, Priority Tax Claims, and the amounts necessary to fund distributions to all Claimants (whether or not such Claimants hold Allowed Claims) in Classes 1 and 3.  The Plan Administrator shall make all such distributions. The remaining installment payments shall be made commencing August 2009 and concluding December 2010.  The Reorganized Debtor shall retain title to its interest in the Chinese JVs, or obtain a security interest in the assets of the Chinese JVs and the purchaser's interests in the Chinese JVs, in accordance with the laws of the PRC, to secure the payment of the purchase price, which retention of title or security interests will not be released until such time as the installment payments have been indefeasibly paid in full.  The joint venture agreements for the Chinese JVs will be rejected, and no Claim for damages arising from such rejection shall be asserted.  The Reorganized Debtor will grant general releases to Zhang Ke with respect to all Causes of Action against him.  The Reorganized Debtor will be owned by the holders of Allowed Claims in Class 4, and New Common Stock will be issued pro rata to such holders.  The Reorganized Debtor shall determine the timing of cash distributions to such holders from the sales proceeds, and shall make all such distributions.  The Plan Administrator shall pursue the Causes of Action, and pay the proceeds of such Causes of Action, net of reasonable costs and attorneys' fees (including the fee of the Plan

Administrator) to the Reorganized Debtor for further distribution to the holders of Allowed

Claims in Class 4. It shall be a condition precedent to the selection of Option A in accordance

with Section 6.3 of the Plan that a deposit of not less than $1 million shall have been made with

the Trustee as of the date of the Confirmation Hearing, which deposit shall be turned over to the

Plan Administrator on the Effective Date. A precise description of this sale will be set forth in a

Plan Supplement, and such description will supersede any description herein.

   (b) <u>Option B – Combined Sale and Restructure:</u> On the Effective Date, the

following will occur: The Reorganized Debtor's interest in SQSS will be transferred to Zhang Ke

or his designees. STJMC will be divided into two new entities. Entity One will own STJMC's

80K copper facility and Entity Two will own STJMC's 30K copper facility. Entity Two will be

transferred to Zhang Ke or his designees. The Reorganized Debtor will retain a 90% interest in

Entity One with Zouping Jinwang Copper Co. Ltd., a PRC corporation, retaining a 10% interest

in Entity One. Zhang Ke or his designees will pay the Reorganized Debtor $16,470,000, of which

$1,470,000 will be used for capital improvements for Entity One. Zhang Ke or his designee will

also assume all existing liabilities for Entity One, and will satisfy all claims of Shandong Jiatai

Petrochemical Co., Ltd. The joint venture agreements for the Chinese JVs will be rejected, and

no Claim for damages arising from such rejection shall be asserted. The Shareholder Investor

Group will contribute $10,000,000 in exchange for the New Common Stock in the Reorganized

Debtor, of which $7,210,000 will be used to fund operations of the Reorganized Debtor. Of the

$26,470,000 paid, $17,790,000 will be paid to the Plan Administrator to satisfy all Administrative

Expense Claims, Gap Period Claims, Priority Tax Claims, and the amounts necessary to fund

distributions to all Claimants (whether or not such Claimants hold Allowed Claims) in Classes 1

and 3; and thereafter to fund pro rata distributions to holders of Allowed Claims in Class 4. The

Plan Administrator shall make all such distributions. The Plan Administrator shall pursue the Causes of Action, and make additional distributions of the proceeds of such Causes of Action, net of reasonable costs and attorneys' fees (including the fee of the Plan Administrator) to the holders of Allowed Claims in Class 4. Once the purchase price has been indefeasibly paid in full, the Reorganized Debtor will grant, and all holders of Allowed Claims in Class 4 shall be deemed to grant, releases to the members of the Shareholder Investor Group, Felix Chung, George Chua, Manna Hung, Zhang Ke, and the holders of the Notes.. It shall be a condition precedent to the selection of Option B in accordance with Section 6.3 of the Plan that a deposit of not less than $1 million shall have been made with the Trustee as of the date of the Confirmation Hearing, which deposit shall be turned over to the Plan Administrator on the Effective Date. A precise description of transactions in this Option B, including the identities of the members of the Shareholder Investor Group will be set forth in a Plan Supplement, and such description will supersede any description herein.

(c) Option C – Stock for Debt: On the Effective Date the Funding Noteholders will pay to the Plan Administrator the amount necessary to satisfy all Administrative Expense Claims, Gap Period Claims, Priority Tax Claims, and the amounts necessary to fund distributions to all Claimants (whether or not such Claimants hold Allowed Claims) in Classes 1 and 3. To the extent that a member of the Funding Noteholders is also the holder of an Allowed Class 1 Claim, such member may offset the amount owed on such Allowed Class 1 Claim against such member's required funding contribution. Except for such permitted setoffs, the Plan Administrator shall make all such distributions. The members of the Funding Noteholders shall receive pro rata 100% of the mandatorily redeemable preferred stock in the Reorganized Debtor. The Funding Noteholders shall be required to redeem such preferred stock in exchange for the

20

amount of their funding contributions plus interest at the rate of eighteen (18%) percent per annum. The New Common Stock will be issued pro rata to the holders of Allowed Claims in Class 4. The preferred stock will have weighed voting rights in the Reorganized Debtor compared to the New Common Stock in a ratio 100 to 1. The Plan Administrator shall pursue the Causes of Action, and pay the proceeds of such Causes of Action, net of costs and attorneys' fees (including the fee of the Plan Administrator) to the Reorganized Debtor for further distribution to the holders of Allowed Claims in Class 4. It shall be a condition precedent to the selection of Option C in accordance with Section 6.3 of the Plan that a deposit of not less than $1 million shall have been made with the Trustee as of the date of the Confirmation Hearing, which deposit shall be turned over to the Plan Administrator on the Effective Date. A precise description of the funding agreement with the Funding Noteholders, including the identities of the Funding Noteholders, and the mandatorily redeemable preferred stock will be set forth in a Plan Supplement, and such description will supersede any description herein.

6.3. <u>Selection of the Reorganization Transaction</u>. The Reorganization Transaction will be selected from Options A, B and C, described in Section 6.2, by the holders of Allowed Claims in Class 4 in the following manner:

(a) <u>Ballot Preferences</u>. The Ballot for holders of Allowed Claims in Class 4, in addition to the designation of acceptance or rejection of the Plan, shall contain the following preferences for those voting to accept the Plan:

(1) Option A, and if Option A cannot be consummated as of the Effective Date, then Option C;

(2) Option B, and if Option B cannot be consummated as of the Effective Date, then Option C; or

(3) Option C (without attempting to consummate Option A or B).

(b) <u>Designation of Preference Not Mandatory</u>.  It shall not be mandatory for the holder of an Allowed Claim in Class 4 that votes to accept the Plan to designate a preference.

(c) <u>Designation of Multiple Preferences Permitted</u>.  The designation of more than one preference is permitted.

(d) <u>Determination of Eligible Option</u>.  Option A or B will be considered eligible if a preference that includes such Option is selected by two-thirds in dollar amount and a majority in number of the holders of Allowed Claims in Class 4 that select a preference.  Option C is deemed eligible irrespective of the selection of preferences.

(e) <u>Selection of the Option</u>.  If only Option C is eligible, it will be deemed selected to proceed to consummation.  If more than one Option is eligible, then the Option receiving the highest percentage of preference designations will be deemed provisionally selected.  In the event of a tie, the Trustee, after consultation with parties in interest present at the Confirmation Hearing, will provisionally select the Option to proceed to consummation, subject to the approval of the Bankruptcy Court.  If it appears to the reasonable satisfaction of the Trustee that the provisionally selected Option can be consummated as of the Effective Date, such Option will be selected to proceed to consummation.  If Option A or B is provisionally selected, and it appears to the reasonable satisfaction of the Trustee that such Option cannot be consummated and that Option C can be consummated, then Option C will be selected to proceed to consummation.

(f) <u>Designation of Class 4 Proceeds</u>.  For purposes of Section 5.3, the Class 4 proceeds shall be the following:

(1) If Option A is consummated, the shares of New Common Stock in the Reorganized Debtor (including the right to receive distributions from the Reorganized Debtor

of the proceeds of the installment payments of the sale to Zhang Ke), plus the net proceeds of the

non-released Causes of Action; or

(2)  If Option B is consummated, the cash remaining from the

$17,790,000 paid to the Plan Administrator, after payment by the Plan Administrator of all

Administrative Expense Claims, Gap Period Claims, Priority Tax Claims, and all Allowed Claims

in Classes 1 and 3, plus the net proceeds of the non-released Causes of Action; or

(3)  If Option C is consummated, the shares of New Common Stock in

the Reorganized Debtor, plus the net proceeds of the Causes of Action.

6.4.  <u>Vesting of Property in Reorganized Debtor</u>.  On the Effective Date all

property of the Estate shall be vested in the Reorganized Debtor, free and clear of any and all

Claims,  including Secured Claims, and Interests, except as expressly set forth in the Plan.

6.5.  <u>Plan Administrator</u>.  The Plan Administrator shall perform the functions set

forth in Sections 6.2, 6.9, 6.10 and 6.14 through 6.18 of this Plan.  The Plan Administrator shall

be entitled to reasonable compensation, as set forth in a Plan Supplement, and to employ and

compensate attorneys and other advisors and agents.  All property held by Plan Administrator

shall be deemed property of the Reorganized Debtor for tax and other purposes.

6.6.  <u>Prohibition of Issuance of Non-Voting Equity Securities</u>.  The corporate

charter of the Debtor shall be amended to include a provision prohibiting the issuance of non-

voting equity securities.  Upon the Effective Date, such charter shall be deemed amended to

include such provision.

6.7.  <u>Cancellation of Existing Securities, Instruments and Agreements</u>.  On the

Effective Date, except as otherwise provided herein, all Old Common Stock, securities,

instruments, and agreements governing any Impaired Claim or Interest shall be deemed cancelled

and terminated, and the obligations of the Debtor relating to, arising under, in respect of, or in connection with such securities, instruments, or agreements shall be deemed released and/or satisfied as to the Debtor. The Reorganized Debtor may require a surrender of any such security or instrument as a condition of the receipt of distribution under the Plan. Such requirement shall be consistent with Section 1143 of the Bankruptcy Code, and shall be binding on the Plan Administrator after the Plan Administrator received written notice thereof.

6.8. Employment of Professionals by Reorganized Debtor. The Reorganized Debtor shall have the right (without application to the Bankruptcy Court) to retain professionals to assist it in carrying out the duties and obligations imposed under this Plan.

6.9. Preservation of Causes of Action. All Causes of Action that are not released in accordance with Section 6.2 are preserved and are vested in the Reorganized Debtor. The Plan Administrator shall have the exclusive right to pursue the Causes of Action, but may compromise them only with the consent of the Reorganized Debtor.

6.10. Execution of Documents to Effectuate Plan. The Trustee, the Reorganized Debtor and the Plan Administrator shall have the power to execute any instrument or document to effectuate the provisions of the Plan, including without limitation the transfer of any money or property required by the Plan. The Trustee, the Reorganized Debtor and the Plan Administrator may, subject to approval of the Bankruptcy Court, designate one or more agents to execute such instruments or documents. Secured Creditors and all other necessary parties shall execute or deliver, or join in the execution and delivery, of any instrument required to effect a transfer of property under the Plan, and shall perform any other act, including the satisfaction or assignment of any lien, that is necessary for the consummation of the Plan.

SL1 923094v1/104237.00009

6.11.  Allowance of Claims Subject to Section 502(d).  Allowance of Claims shall be in all respects subject to the provisions of Section 502(d) of the Bankruptcy Code.

6.12.  Right of Setoff.  Except for any Claim that is Allowed in an amount set forth in the Plan, the Reorganized Debtor shall have the right to set off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any and all debts, liabilities and claims of every type and nature whatsoever which the Estate may have against the holder of such Claim, and neither any prior failure to do so nor the allowance of such Claim, whether pursuant to the Plan or otherwise, shall constitute a waiver or release of any such right of setoff. The exercise of such setoff right shall be binding on the Plan Administrator after the Plan Administrator receives written notice thereof.

6.13.  Authorization of Corporate Action.  The entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor to take or cause to be taken all corporate actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after, the Effective Date.  All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable nonbankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders or directors of the Debtor.

6.14.  Reserves for Disputed Claims.  On the Effective Date, the Plan Administrator, shall reserve for the account of each holder of a Disputed Claim (i) the property which would otherwise be distributable to such holder on such date in accordance with the Plan were such Disputed Claim an Allowed Claim on such date, in the face amount thereof, or such other amount as ordered by the Bankruptcy Court, or (ii) such other property as such holder and the Reorganized Debtor may agree.  If and when the Reorganized Debtor makes distributions to holders of New Common Stock, the distributions on account of New Common Stock allocated to

Disputed Claims shall be paid to the Plan Administrator, and held in reserve by the Plan Administrator in accordance with the provisions of this Section 6.14.  Property reserved under this section shall be set aside and segregated by Class of Claims.  To the extent such Disputed Claim becomes an Allowed Claim, the property so reserved for the holder thereof shall be distributed to such holder pursuant to, and to the extent provided for in, the Plan.  Upon any Disputed Claim becoming a Disallowed Claim in whole or in part, the property reserved for the payment of the Disallowed portion of such Disputed Claim, including any interest or dividends attributable thereto, shall become available for distribution to holders of Allowed Claims in accordance with the provisions of the Plan.

6.15.  <u>Reserve for Estimated Expenses</u>.  On the Effective Date, the Plan Administrator shall fund an expense reserved for payment of any expenses that are then unpaid or are anticipated to be incurred by the Reorganized Debtor for professional fees.  The expense reserve shall be funded from all Cash in the Estate.  Once all expenses remaining unpaid have been paid in full and no other expenses are anticipated to be incurred, any amount remaining in the expense reserve shall become available to the Reorganized Debtor.

6.16.  <u>Payment or Distribution of Disputed Claim</u>.  No payments or other distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim, or portion thereof, is Allowed by Final Order, or unless otherwise provided by order of the Bankruptcy Court.  Holders of Disputed Claims whose Claims ultimately become Allowed Claims shall be bound, obligated and governed in all respects by the provisions of this Plan.

6.17.  <u>Timing of Payment or Distribution When a Disputed Claim Becomes an Allowed Claim</u>.  Subject to the provisions of the Plan, payments and distributions with respect to

SL1 923094v1/104237.00009

each Disputed Claim that becomes an Allowed Claim shall be made within 30 days after the date on which the Claim becomes Allowed.

6.18.  Disputed Distribution.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution, the Plan Administrator, may, in lieu of making such distribution to such holder, make such distribution into an escrow account until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

6.19.  Estimation.  In order to effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Estate, the Trustee (prior to the Effective Date) and the Reorganized Debtor (after the Effective Date) shall have the right to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim and which hearing may be held on an expedited basis), estimating a Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code.

6.20.  No Distribution for Equitably Subordinated Claims.  Notwithstanding any other provision of the Plan, any Claim that is equitably subordinated pursuant to section 510(c) of the Bankruptcy Code and a Final Order of the Bankruptcy Court shall receive no distribution.

## ARTICLE VII
## Executory Contracts

7.1.  General Treatment of Executory Contracts.  Subject to Section 7.2, all executory contracts or unexpired leases shall be deemed rejected, unless otherwise assumed by prior order of the Bankruptcy Court, or listed on the Schedule of Assumed Contracts.  Persons who are parties to Executory Contracts that appear on the Schedule of Assumed Contracts will be

given at least ten (10) days' notice of the filing of Schedule of Assumed Contracts and the Confirmation Hearing, and their opportunity to object to assumption and any cure amount listed.

7.2. <u>Special Treatment for Joint Venture Agreements with Chinese JVs</u>. If Option A or B, described in Section 6.2(a) or 6.2(b) is consummated, the joint venture agreements for the Chinese JVs shall be deemed rejected and no Claim for rejection damages shall be Allowed. If Option C, as described in Section 6.2(c) is consummated, the joint venture agreements concerning the Chinese JVs shall be assumed. The order approving the Disclosure Statement shall require that all amounts asserted to be necessary to cure a default under such joint venture agreement or otherwise required to be paid to comply with Section 365(b) of the Bankruptcy Code shall be asserted in writing, served on the Trustee, and filed with the Bankruptcy Court prior to the Confirmation Date. In the event no such written assertion is timely served and filed, the Confirmation Order shall provide that no amount is necessary to be paid to assume such agreements.

7.3. <u>Procedures for Resolving Rejection Damage Claims</u>. Any Claimant alleging to have a Claim based on such rejection must file proof of such Claim not later than 30 days after the Confirmation Date. Such Claims shall be considered Disputed Claims as of the Effective Date. Thereafter, such Claims shall become Allowed Claims, if the Reorganized Debtor does not object to such Claims within 30 days after the Effective Date.

**ARTICLE VIII**

**<u>Post-Confirmation Business</u>**

8.1. <u>Business of Reorganized Debtor</u>. The Reorganized Debtor shall continue to operate its business after consummation of the Plan.

28

8.2.  Selection of Directors and Officers.  The selection of directors and officers of the Reorganized Debtor shall depend upon which Reorganization Transaction is selected in Section 6.3 to be consummated.  If Option A is consummated, the directors and officers shall be selected by the lenders of the Post-Petition Financing Agreements.  If Option B is consummated, the directors and officers shall be selected by the Shareholder Investor Group.  If Option C is consummated, the directors and officers shall be selected by the Funding Noteholders.  The individuals who have been selected, and the compensation of any insider who has been selected, shall be identified in a Plan Supplement to be filed with the Bankruptcy Court prior to the Confirmation Hearing.  The individuals selected shall continue in office until an election of directors is held in accordance with the corporate charter of the Reorganized Debtor, as amended in accordance with the Plan.

## ARTICLE IX
## Discharge; Injunction; Release; Exculpation

9.1.  Discharge From Debts Arising Prior to Confirmation.  On the Effective Date, the Debtor shall be discharged from any debt that arose prior to the Confirmation Date, and any debt of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not:

(a)  Proof of Claim based on such debt is filed or deemed filed under Sections 501 or 1111(a) of the Bankruptcy Code;

(b)  such Claim is allowed under Section 502 of the Bankruptcy Code; or

(c)  the holder of such Claim has accepted the Plan.

9.2.  **Injunction Against Interference With Consummation or Implementation of Plan.  The Confirmation Order shall contain an injunction against all entities who are**

**bound by this Plan preventing the commencement or continuation of any judicial or administrative proceeding or the employment of any process to interfere with the consummation or implementation of this Plan or the payments to be made hereunder.**

9.3.  **Release by Holders of Allowed Class 4 Claims.  In the event Option B is consummated, the holders of Allowed Claims in Class 4 shall be deemed to have released the members of the Shareholder Investor Group, Felix Chung, George Chua, Manna Hung, Zhang Ke, and the holders of the Notes..  The Confirmation Order shall contain an injunction to enforce such release.**

9.4.  <u>All Distributions in Full and Final Satisfaction</u>.  All payments and all distributions to be made hereunder on account of Claims and Administrative Claims shall be in full and final satisfaction, settlement, release and discharge of such Claims and Administrative Claims.

9.5.  **<u>Exculpation for Trustee, the Committee, the Funding Noteholders and Their Agents</u>.  The Trustee, the Committee, the Funding Noteholders and their officers, directors, employees, attorneys, accountants, financial advisors, representatives and agents, and their respective successors and assigns, will not have or incur any liability to the holder of any Claim or Interest, for any act or omission in connection with or the Reorganization Case or arising out of the Plan or the property to be distributed under the Plan and, in all respects, they will be entitled to rely upon the advice of counsel with respect to such matters and will be fully protected in acting or refraining from acting in accordance with such advice; <u>provided</u>, <u>however</u>, that the foregoing exculpation from liability will not apply to actions or omissions (a) in bad faith, (b) as a result of recklessness, willful misconduct, negligence, gross negligence or breach of fiduciary duty, or (c) arising after the Confirmation Date.**

SL1 923094v1/104237.00009

# ARTICLE X
## Provisions Governing Distributions

10.1.  <u>Payments in U.S. Dollars</u>.  All payments required under the Plan shall be made in U.S. dollars by checks drawn on a domestic bank selected by the Trustee, or by wire transfer from a domestic bank, at the option of the Trustee.

10.2.  <u>Distributions Only on Business Days</u>.  Notwithstanding any of the foregoing provisions, in the event any distribution called for under this Plan is due on a day other than a Business Day, then such distribution shall instead be due on the next Business Day following such day.

10.3.  <u>Transmittal of Payments and Notices</u>.  Except as may otherwise be agreed to by the holder of a Claim, any payment or notice to which such holder shall become entitled under the provisions of the Plan shall be delivered to such holder by regular first-class mail, postage prepaid, in an envelope addressed to such holder as he or his authorized agent may direct in a request filed, on or before the Effective Date, with the Bankruptcy Court and, if such a request is not filed, to the address shown in the Schedules, or, if a different address is stated in a proof of Claim duly filed, to such address; provided that such holder may notify the Trustee of a change in address after the Effective Date.  In all cases in which payment or delivery is effectuated by mail, the date of payment or delivery shall be the date of mailing.  Payments made in accordance with this subsection will be deemed made to the holder regardless of whether such payment is actually received by such holder.

10.4.  <u>Distributions Returned as Not Forwardable</u>.  Notwithstanding any of the foregoing provisions, if a distribution made to the holder of any Allowed Claim is returned as not forwardable and such holder fails to notify the Trustee of the proper address within 180 days after

the Effective Date, then such holder shall have waived its rights to any distribution under this Plan.

## ARTICLE XI
### Plan Interpretation, Confirmation and Voting

11.1.  <u>Procedures Regarding Challenges to Designation of Classes as Impaired or Unimpaired</u>.  In the event the designation of the treatment of a Class as Impaired or Unimpaired is challenged, the Bankruptcy Court shall determine the challenge, and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

11.2.  <u>Withdrawal and Modification of Plan</u>.  This Plan may be withdrawn by the Trustee prior to the Confirmation Date.  At the Trustee's request and with the consent of 70% of the lenders of the Post-Petition Financing Agreements, this Plan may be modified in any manner consistent with Section 1127 of the Bankruptcy Code prior to substantial consummation thereof.  At the Trustee's request and with the consent of 70% of the lenders of the Post-Petition Financing Agreements, this Plan may be modified after substantial consummation thereof with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any entity who does not consent in writing to such modification.

11.3.  <u>Cramdown of Plan</u>.  If all of the applicable requirements for confirmation of this Plan are met, except for Section 1129(a)(8) of the Bankruptcy Code, the Trustee intends to request that the Bankruptcy Court confirm this Plan pursuant to Section 1129(b) of the Bankruptcy Code.

11.4.  <u>Governing Law.</u>  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or the law of the state of incorpora-tion of the Debtor with respect to matters of corporate governance, the laws of the State of New

York applicable to contracts executed in such State by residents thereof and to be performed entirely within such State will govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with this Plan.

11.5.  Compliance With Tax Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Trustee will comply with all withholding and reporting requirements issued by any federal, state, local or foreign taxing authority.

11.6.  Effect of Unenforceable Plan Provisions.  Should any provision of this Plan be determined to be unenforceable, the enforceability of the other provisions of this Plan shall not be affected.

## ARTICLE XII
## Retention of Jurisdiction

12.1.  From and after the Confirmation Date and until the Final Decree closing the Debtor's case is entered, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the Reorganization Case for the following purposes:

(a)  to hear and determine any and all objections to the allowance of any Claim or Administrative Claim or any controversy as to the classification of Claims or any matters which may directly, indirectly or contingently effect the obligations of the Debtor to any parties;

(b)  to hear and determine any and all applications for compensation and reimbursement of expenses by Professional Persons;

(c)  to hear and determine any and all pending applications for the rejection and disaffirmance of executory contracts and unexpired leases, and to fix any Claims resulting therefrom;

(d)  to hear and determine all adversary proceedings commenced pursuant to Bankruptcy Rule 7001, including those commenced by the Plan Adminstrator asserting any of the Causes of Action ;

(e)  to enforce the provisions of this Plan;

(f)  to enjoin any Person from interfering with the implementation and consummation of the Plan or with the release provision of the Plan;

(g)  to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of this Plan; and

(h)  to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code.

## ARTICLE XIII
## Conditions Precedent

13.1.  Conditions to Confirmation.  The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 13.3 of this Plan:

(a)  the Bankruptcy Court shall have approved by Final Order the Disclosure Statement with respect to this Plan in form and substance reasonably acceptable to the Trustee and 70% of the lenders of the Post-Petition Financing Agreements; and

(b)  the Confirmation Order shall be in form and substance reasonably acceptable to the Trustee and 70% of the lenders of the Post-Petition Financing Agreements.

13.2.  <u>Condition to the Effective Date</u>.  This Plan may not be consummated, and the Effective Date shall not occur unless and until each of the following conditions shall have been either satisfied or waived pursuant to Section 13.3 of this Plan:

(a)  the Confirmation Order shall have been entered by the Bankruptcy Court, shall be a Final Order and no request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending;

(b)  all necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan;

(c)  if Option A or Option B is selected to proceed to consummation, then the Trustee shall have received an amount not less than the sum that is necessary to (1) satisfy all Administrative Expense Claims, Gap Period Claims, Priority Tax Claims, (2) fund all distributions to all Claimants (whether or not such Claimants hold Allowed Claims) in Classes 1 and 3, and (3) fund a reserve, in an amount to be determined by the Trustee, to pursue the Causes of Action: and

(d)  the total amount of Administrative Expense Claims, Gap Period Claims, Priority Tax Claims and Class 3 Claims that are either Allowed Claims or Disputed Claims does not exceed $1 million.

13.3.  <u>Waiver of Conditions to Confirmation or Consummation</u>.  The Trustee and 70% of the lenders of the Post-Petition Financing Agreements may waive any of the conditions set forth in Sections 13.1(b) and 13.2(b) and 13.2(c) of the Plan in writing executed by an authorized agent of the Trustee or such lenders and without notice and a hearing.  The failure to satisfy any condition may be asserted by the Trustee or such lenders regardless of the circumstances giving rise to the failure of such condition to be satisfied.  If the Trustee or such

SL1 923094v1/104237.00009

lenders fail to assert the non-satisfaction of any such conditions, such failure shall not be deemed a waiver of any other rights hereunder.

## ARTICLE XIV
## Miscellaneous

14.1. <u>Headings</u>. Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

14.2. <u>Severability</u>. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

14.3. <u>Blank Ballots</u>. Any ballot which is executed by the holder of an Allowed Claim entitled to vote, but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan. Any ballot not filed in accordance with the filing instructions on the ballot pertaining to this Plan shall not be counted for voting purposes.

14.4. <u>Payment of Statutory Fees</u>. All fees payable by the Debtor pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid when due pursuant to the terms thereof; <u>provided</u>, <u>however</u>, that all such fees due for periods prior to the Effective Date shall be paid on or before the Effective Date.

14.5. <u>No Interest</u>. Unless otherwise specifically provided for in the Plan or Confirmation Order or Allowed by a Final Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to such interest or any penalty or late charge accruing on or after the Petition Date on any such Claim. Interest

36

shall not accrue or be paid upon any Disputed Claim with respect to the period from the Petition Date to the date of distribution with respect to such Claim.

14.6. <u>No Attorneys' Fees</u>. No attorneys' fees will be paid with respect to any Claim or Interest except as expressly specified herein or in the Post-Petition Financing Agreements or Allowed by a Final Order of the Bankruptcy Court.

14.7. <u>No Injunctive Relief</u>. No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

14.8. <u>Plan Controls</u>. In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

SL1 923094v1/104237.00009

14.9.  Notices.  All notices, requests, and demands made under or in accordance with the Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission or by electronic mail, when received and telephonically confirmed, addressed to:  (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, NY 10044, Attn: Gregory Zipes, Esq., (ii) the Trustee, care of his counsel, Stevens & Lee, P.C., 485 Madison Avenue, 20th Floor, New York, NY 10022, Attn:  Alec P. Ostrow, Esq., Leonard P. Goldberger, Esq. and Jocelyn Keynes, Esq. (iii) the Debtor, care of its counsel, the Law Offices of David C. McGrail, 676A Ninth Avenue, #211, New York, New York 10036, Attn: David C. McGrail; and (iv) the Lenders, Noteholders of the Debtor, and Committee care of their counsel, Morrison & Foerster, LLP, 1290 Avenue of the Americas, New York, New York, 10104, Attn Karen Ostad, Esq. and Jordan A. Wishnew, Esq.

14.10.  Limitation of Preclusive Effect of Plan Confirmation.  Confirmation of the Plan shall not have the effect of precluding, under the doctrine of res judicata, claim preclusion, or otherwise, the litigation, prosecution and defense of any (a) Cause of Action preserved in Section 6.9, whether or not such Cause of Action is expressly identified in the Plan, the Disclosure Statement or a Plan Supplement, and whether or not such Cause of Action is

*[Remainder of Page Intentionally Left Blank]*

SL1 923094v1/104237.00009

commenced after the Confirmation Date, or (b) objection to a Claim, provided that such objection

to a Claim is filed not later than the Confirmation Date or such later date fixed by order of the

Bankruptcy Court.

Dated: New York, New York
      May 19, 2009

STEVENS & LEE, P.C.                                      */s/ George M. Kelakos*
                                                   George M. Kelakos,
By:      */s/ Alec P. Ostrow*                             as Chapter 11 trustee
Leonard P. Goldberger (admitted *pro hac vice*)
Alec P. Ostrow  (AO-3104)
Jocelyn Keynes (JK-7728)
485 Madison Avenue, 20th Floor
New York, New York  10022
Telephone:  (212) 319-8500
Facsimile:  (212) 319-8505
Email:  lpg@stevenslee.com
        apo@stevenslee.com
        jk@stevenslee.com

GENERAL BANKRUPTCY COUNSEL
FOR THE CHAPTER 11 TRUSTEE

SL1 923094v1/104237.00009